**COLUMBUS GAS & FUEL CO. et al. v. CITY OF COLUMBUS, OHIO.**

**No. 5623.**

Circuit Court of Appeals, Sixth Circuit.

June 27, 1930.

See also 17 F.(2d) 630.

L. K. Langdon, of Cincinnati, Ohio (Eagleson & Laylin, of Columbus, Ohio, on the brief), for appellants.

J. M. Butler, of Columbus, Ohio (John L. Davies, of Columbus, Ohio, on the brief), for appellee.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

Article 18, § 3, of the Constitution of Ohio provides that municipalities shall have authority to exercise all powers of local self-government. Section 4 of the same article authorizes a municipality to contract with others for the service of a public utility. Section 5 provides that a municipality, proceeding to contract with any person or company for such service, "shall act by ordinance and no such ordinance shall take effect until

after thirty days from its passage. If within said thirty days a petition signed by ten per centum of the electors of the municipality shall be filed with the executive authority thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a majority of those voting thereon." Sections 7 and 8 provide for the framing and adoption, by submission to the electors, of a charter. Section 9 provides for the amendment of such charters.

The city of Columbus is a charter city. Section 192 of the charter as amended August 12, 1924, effective August 15, 1925, in substance authorizes council to grant by ordinance permission to any individual, company, or corporation to construct and operate a public utility in the streets and public grounds of the city, but provides "that no * * * change in rates, shall become operative until it shall have been submitted to a vote of the electors of the city and approved by a majority of those voting thereon."

For many years the Columbus Gas & Fuel Company and the Federal Gas & Fuel Company, appellants, had been operating as public utilities in the city of Columbus, supplying natural gas to its inhabitants under municipal franchises. In the year 1924 the city undertook by ordinance to fix the price of such natural gas at 40 cents per thousand cubic feet, net, for a period of five years from September 12, 1924. This ordinance was made the subject of attack, as confiscatory, in a suit filed in the United States District Court at Columbus. Appeal from the final decree in such suit is now pending here. The five years covered by that ordinance being about to expire, the city council, on June 3, 1929, passed Ordinance 410—29, fixing the price at 48 cents for the remaining portion of 1929, and at a sliding scale of from 65 cents to 55 cents thereafter for a period of five years from January 1, 1930. This ordinance also provided for the consolidation of appellants, for the quality of gas to be supplied, for extensions and improvements, for an option to purchase and/or lease appellants' properties by the city, for the settlement of all then pending litigation between the city and appellants, and for the repayment to consumers of the sums impounded in the pending litigation. The ordinance was duly accepted in writing by appellants, but no steps were taken to submit it to the electors under the provisions of section 192 of the city charter.

On August 5, 1929, the city council, acting upon the assumption that failure to submit Ordinance 410—29 to the electors so far invalidated the action theretofore taken as to permit a repeal, passed Ordinance 636—29, purporting to repeal Ordinance 410—29 in toto, and, by section 2, providing that "council hereby declares its intention not to submit this ordinance to a vote of the people." Subsequent rate ordinances were passed by council, which were submitted to popular vote and one of which was approved. Thereupon the companies appealed the question of the rates fixed by such later ordinance to the public utilities commission, purporting, however, to save to themselves whatever rights they might have under Ordinance 410—29 and the present litigation. Under supplemental motion and stipulation it is now contended that appellants, by this appeal to the public utilities commission, have abandoned their rights under Ordinance 410—29 and acquiesced in the various subsequent legislative acts of the city, and may not further maintain the present action. In view of the reservation of rights, if any, under ordinance 410—29 and the pending litigation, and more particularly in view of the various other subjects of regulation than that of rates, contained in Ordinance 410—29, we are of the opinion that whatever rights the company had thereunder were not waived or abandoned by an appeal upon the sole question of rates. If the passage of Ordinance 410—29, and its acceptance, operated as a binding and effective contract, entered into, as it must then have been, under definite grant of sovereign power from the state to the municipality, the city could not thereafter, acting or purporting to act under the same grant of sovereign power, impair the obligation of such contract.

The sole question is, therefore, whether the passage and acceptance of Ordinance 410—29, without its submission to popular vote, resulted in a contract, with attending vested contract rights. This in turn depends upon the validity of section 192 of the charter, for it is obvious that if effect is to be given to the provision that no change in rates "shall become operative until it shall have been submitted to a vote of the electors of the city and approved by a majority of those voting thereon," Ordinance 410—29 never became effective so as to secure to appellants the enjoyment of any vested rights thereunder, unless it be the right to have such ordinance submitted to vote. Under such circumstances the repeal would not impair contract obligations of the type for which appellants now contend.

The chief insistence of the invalidity of section 192 is that article 18, § 5 of the Constitution of Ohio specifically provides that the municipality shall act by ordinance, that such ordinance shall not take effect until thirty days from its passage, and for the referendum which alone may then defeat it; that such constitutional provisions are both mandatory and exclusive, and the provision of section 192, for referendum in every case, void; and that Ordinance 410—29 therefore took effect upon acceptance by appellants and the expiration of thirty days without the filing of referendum petitions.

■■ Doubtless the appellants are right in the contention that where the Constitution of the state confers certain powers upon a municipality and prescribes the manner in which such powers may be exercised, the Legislature may not deny to a municipality the right to exercise those powers, nor may people of the municipality, by charter, provide for their exercise in a manner different from that provided in the Constitution. Thus, the Constitution having granted plenary power to construct and operate a public utility, the Legislature may not prescribe conditions to the enjoyment of that right (Dravo-Doyle Co. v. Orrville, 93 Ohio St. 236, 112 N. E. 508); where a municipality has exercised the constitutionally conferred power of contracting for public utility service, the Legislature may not permit the terms of such contract to be varied by appeal to the public utilities commission by but one party to the contract (City of Lima v. Public Utilities Commission, 100 Ohio St. 416, 126 N. E. 318), or upon complaint to the commission, signed by but 3 per cent. of the electors (Link v. Public Utilities Commission, 102 Ohio St. 336, 131 N. E. 796); or where the Constitution provides the manner in which a charter may be amended, the Legislature may not provide for a change in the form of an existing charter government in a manner and method differing from that required by the Constitution (Switzer v. State ex rel., 103 Ohio St. 306, 133 N. E. 552), and the city may not so provide in its charter (State ex rel. v. Gibbons, 116 Ohio St. 390, 156 N. E. 455). But where the Constitution provides a *limitation* upon the power of the municipality for the protection and benefit of its inhabitants, or where the circumstances are not such that the case falls clearly within the constitutional grant, we know of no decision denying to the people of the municipality, when adopting a charter, the right to impose a further limitation, for their own protection, upon the powers of council; or

to the legislature to do the same, when dealing with the exceptional situation.

Some of the authorities above cited use such language as that the constitutional provisions "are not only mandatory, but they are also exclusive, that is, they are controlling as against any statutory enactment or departure therefrom." Read with their context, and as applied to the individual cases under submission, such fragmentary portions of the opinions are undoubtedly sound; but they do not mean that those for whose benefit a right is reserved, may not, in the exercise of another right—that of adopting a charter—so distribute and define the powers of local governmental agencies as to impose a further limitation. As said in Perrysburg v. Ridgway, 108 Ohio St. 245, 253, 140 N. E. 595, 597: "But what is a city charter but a city constitution, and a city constitution can in no wise enlarge the municipal power granted in the state Constitution. After all, it only distributes that power to the different agencies of government, and *in that distribution may place such limitation, but not enlargement, upon that power, as the people of the municipality may see fit.*" (Italics ours.)

A precisely analogous situation was presented in State ex rel. v. Cincinnati St. Ry. Co., 97 Ohio St. 283, 119 N. E. 735, 740, where, in providing for a rapid transit system, and being in doubt as to whether the city had the power under article 18, §§ 4 and 5, to do all that was necessary, the General Assembly enacted the Bauer Law (106 Ohio Laws, p. 286). This law, as is the case here, required referendum whether petitions therefor were filed or not. This provision was upheld, upon attack; the court saying: "In the Bauer law the General Assembly was not content to allow that matter to be uncertain or dependent on the vigilance of citizens, but saw fit in the exercise of its legislative power to provide that the matters referred to should be submitted to a popular vote without any petition of the electors." In approving the additional referendum provisions, it was also remarked that inconsistency between such provision, and the constitutional provision for referendum, was wholly absent.

■ This case is precisely in point and we consider it controlling here. The constitutional referendum provision was inserted for the protection and benefit of the people of the municipalities; not for that of the utilities. Neither the city nor its inhabitants are complaining. In their wisdom, the people of Columbus saw fit to further limit the power of council by requiring a referendum

382

in every case of franchise grant and rate regulation. They were not content to leave this to the vigilance of individual citizens. This was a matter, we think, properly subject to charter provision under the Home Rule Amendment (Const. Ohio art. 18), and in no wise inconsistent with the lesser protection afforded by the Constitution. Cf. Billings v. Cleveland Ry. Co., 92 Ohio St. 478, 111 N. E. 155. The constitutional provision for referendum is not made inoperative; the people have but limited, in their control of the local government, the possibly broader powers of council without such limitation. This certainly violates no constitutional right of appellants.

■■ The conclusion at which we have arrived definitely prevents granting the relief prayed for, which, in substance, is the specific enforcement of Ordinance 410—29. The bill contains no prayer that the repealing ordinance be declared invalid and the parties restored to the position they occupied before its passage. It seems to us clear that a duty to take the steps necessary to submit Ordinance 410—29 to the electors was to be implied from the provisions of section 192 of the charter, or must arise by reason of the passage and acceptance of the ordinance. The section, being a part of the fundamental law of the municipality, would be read into whatever contractual relation arose from the passage and acceptance of the ordinance. But obviously, until the ordinance was submitted to vote and thus made operative, the utility companies could acquire no right to its performance. Whether whatever rights as then existed, to have it submitted to the electors, were lost by laches, estoppel, or abandonment, is not presented upon the present record. The appellants seek no relief adapted to simply place them in statu quo ante. Under these circumstances, the decree of the District Court must be

Affirmed.